PHILIP GREEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7715.   Promulgated October 10, 1927.

> Petitioner owned the Grant Theatre and he later purchased the Parkway for the purpose of eliminating competition in the immediate neighborhood, which latter theatre was dismantled by petitioner and closed. *Held*, there is not sufficient evidence that the business and good will of the Parkway Theatre were transferred to the Grant and subsequently sold as a part of the assets of the Grant. Accordingly respondent's inclusion of the original cost of the Parkway in determining petitioner's net worth at December 31, 1923, approved.

*Victor H. Blanc, Esq.*, for the petitioner.
*L. L. Hight, Esq.*, for the respondent.

This proceeding is for the redetermination of a deficiency in income taxes for the calendar years 1919, 1920, 1921, 1922, and 1923 of $7,055.94. The approximate amount in controversy is $3,294.

The sole question in this case is whether or not the respondent erred in determining the net worth of the petitioner at December 31, 1923, on which basis petitioner's taxes were computed, by including in said net worth the Parkway Theatre property at its cost value of $40,000 instead of $16,000, the value contended for by the petitioner.

FINDINGS OF FACT.

Petitioner is an individual doing business at 4018 Girard Avenue, Philadelphia, Pa.

Petitioner erected the Grant Theatre, hereinafter referred to as the Grant, at 4024–4026 Girard Avenue, Philadelphia, Pa., which theatre was completed in January, 1921, and was thereafter owned and operated by him until its sale to one Eli Resnick, in July, 1923.

There was another motion-picture theatre a short distance away known as the Parkway Theatre, hereinafter referred to as Parkway, located at 1106–1108 North Fortieth Street, Philadelphia, Pa.

Prior to the spring of 1921 the Parkway was owned and operated by a widow, and later by her brother-in-law. One Louis Hirsh, realizing that the Parkway was not doing a good business but thinking that he could make money out of that property as a motion-picture theatre, purchased it in the spring of 1921 and immediately advertised that extensive alterations and repairs would be made. Hirsh paid $31,500 for the Parkway.

The petitioner having learned that Hirsh had purchased the Parkway and knowing Hirsh's reputation in the motion-picture industry and fearing the competition that would be offered by the Parkway under the management of Hirsh, offered to purchase the Parkway from Hirsh for the sum of $40,000. On May 21, 1921, the petitioner and Hirsh entered into articles of agreement whereby petitioner purchased the said Parkway from Hirsh for the sum of $40,000. The pertinent provisions of that agreement are as follows:

The said party of the first part agrees to sell and convey to the said party of the second part, who agrees to purchase

ALL THAT CERTAIN lot or piece of ground with the messuage or tenement thereon erected SITUATE on the West side of Fortieth Street, at the distance of Fifty-two feet Northward from the North side of Poplar street, in the Twenty-fourth Ward of the City of Philadelphia: CONTAINING in front or breadth on the said Fortieth street Seventeen feet and extending Westward of that width in length or depth between lines parallel with said Poplar street, One hundred feet to a certain Ten feet wide alley leading from said Poplar street to Eaglesfield street.

ALSO ALL THAT CERTAIN lot or piece of ground with the messuage or tenement thereon erected SITUATE on the West side of Fortieth street at the distance of Sixty-nine feet Northward from the North side of Poplar street, in the Twenty-fourth Ward of the City of Philadelphia: CONTAINING in front or breadth on the said Fortieth street Seventeen feet and extending Westward of that width in length or depth between lines parallel to said Poplar street One hundred feet to a certain ten feet wide alley leading from said Poplar street to Eaglesfield street.

BEING KNOWN AND NUMBERED AS 1106–9 NORTH 40TH STREET. ON THE TERMS AND CONDITIONS FOLLOWING, TO WIT: For the price or sum of FORTY THOUSAND ($40,000) DOLLARS, payable as follows.

\*          \*          \*          \*          \*          \*          \*

It is further understood and agreed that all fixtures including machines, electric signs and other equipment contained on the premises, with the possible exception of the seats now installed or recently removed, which belong to the party of the first part, are included in this sale without additional consideration or payment.

Shortly after the purchase of the Parkway, petitioner dismantled the building and later rented it for a public market. The premises

were never used as a moving-picture theatre after the petitioner purchased it.

On June 15, 1923, one Eli Resnick, agreed to purchase the Grant from the petitioner and the purchase price was fixed. Before Resnick would conclude the purchase of the Grant from petitioner, Resnick required a covenant to the effect that petitioner would never engage in the moving-picture business either at the site of the Parkway or at any place within ten city squares of the Grant, which covenant was made by the petitioner in a separate writing.

### OPINION.

MORRIS: The petitioner contends that when he purchased the Parkway he purchased the real estate, fixtures and good will, as a going business, and that the purchase price of $40,000 represented $16,000 which he paid for the land and $24,000 which he paid for the good will of the business. He further contends that when he closed the Parkway and dismantled the building, he transferred the business of that theatre, together with the good will, to the Grant and that the good will having been so transferred, it became part of the assets of the Grant. Therefore, as the petitioner contends, when he sold the Grant to Eli Resnick in July, 1923, he disposed of his good will which had been acquired in the purchase of the Parkway and consequently the respondent should not have included the Parkway property in the computation of his net worth at the cost price of $40,000 but should have included it at $16,000, excluding the value of the good will which had been transferred to and had become a part of the Grant, which was sold in July, 1923.

The record does not show by what method the respondent computed petitioner's net worth, nor has any evidence been offered with respect to the total values used by respondent as of December 31, 1923; therefore, we are not called upon to determine the correctness of the computation or the values used as of that date.

The parties having made no segregation of the purchase price of $40,000, nor having made any reference at all with respect to good will in the articles of agreement effecting this sale, we must first determine whether the Parkway was the possessor of a good will of the value claimed by the petitioner and if so whether said good will passed to the petitioner as a part of the purchase price of $40,000, and further, whether good will, as such, can be transferred as contended under the circumstances of this case.

If the Parkway was the possessor of a valuable good will at the time the petitioner purchased it, that fact was certainly not borne out by the testimony offered. Hirsh, the party from whom the petitioner purchased the Parkway, testified that when he purchased it, it was

not doing a good business, and that it was not a worthwhile moving-picture show, but that he hoped to purchase it and make an up-to-date house of it and then build up a good business, but that before he had had an opportunity to realize his ambition or had justified his expectations he sold the Parkway to the petitioner.

It is perfectly clear from the testimony that the uppermost thought in the mind of the petitioner, at the time of the purchase of the Parkway, was to eliminate the probable competition that would be offered by Hirsh. The articles of agreement entered into between these parties not only did not segregate the purchase price of $40,000 into component parts, but failed to make any reference whatsoever to the fact that good will was intended to be a part of the transaction. It certainly does not appear from all the circumstances surrounding the purchase of the Parkway that good will was an influencing factor in the transaction.

No attempt was made by the petitioner to prove the value of the alleged good will at the date of acquisition of the Parkway, except indirectly. The petitioner offered the testimony of several real estate appraisers as to the value of the real estate at the date of acquisition, on which the Parkway Theatre was located, but not conceding that those values are satisfactorily established, we can not assume that the difference between the appraised value and the purchase price of $40,000 represents the value of good will.

Petitioner's counsel states in his brief:

The taxpayer is not contending in his appeal that merely the good will of the Fortieth Street Theatre was transferred to the Girard Avenue Theatre in May, 1921. Were this the case, it is admitted that this appeal should fail, for it is unquestionably the law that good will can not be transferred from one business to another unless the business to which the good will formerly attached also is transferred. It is equally true, however, that a business plus the good will that attaches to it may be transferred from one place to another, and may be combined with another business and its own good will.

In *Widdall* v. *Garsed*, 17 Atlantic 418, it was said:

The "transfer of the business" is an uncertain, equivocal expression, and may mean property, or it may mean good will.

We find nothing in the evidence submitted which would warrant the conclusion that the business and/or good will or any other property of the value of $24,000 was transferred from the Parkway Theatre. Of course the petitioner testified that when the Parkway was closed the receipts of the Grant were increased, but that we deem was due to the elimination of the competition in the immediate neighborhood and not to any valuable asset that had been transferred from the Parkway to the Grant.

Finding as we do that no good will passed to the petitioner upon the acquisition of the Parkway, it is not necessary for us to discuss

the question of whether or not good will of the Parkway could under the law be transferred to and become a part of the assets of the Grant. We are of the opinion, however, that had good will existed at the time the petitioner acquired the Parkway it could not possibly have been transferred to the Grant under the circumstances of this case because as this Board said in the *Appeal of Pevely Dairy Co.*, 1 B. T. A. 385—

> Good will is not something which can be delivered like merchandise, but as recognized in all the definitions, it is the probability or expectation of retaining the old customers and that probability or expectation is all a purchaser can acquire.

> *The deficiency of $7,055.94 as set forth in deficiency letter of August 26, 1925, is approved and judgment will be entered on 15 day's notice, under Rule 50.*